**In the Matter of the Trust Created by the Last Will and Testament of Mary E. WARD, Decedent.**

No. CO–84–945.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Review Denied March 29, 1985.

Richard I. Diamond, Minneapolis, for Douglas Ward, Gloria Jean Swanson, and Nancy Ward Wenberg.

W.P. Quarnstrom, Marshall, for First American Bank and Trust of Marshall.

Heard, considered, and decided by LESLIE, P.J., and LANSING and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

This appeal by the grandchildren and principal remaindermen of a trust created by Mary E. Ward challenges the manner in which the trustee has distributed income to the life beneficiary, and the investments and reinvestments which the trustee has made for the accounting periods in question.

The trial court found that the evidence presented was void of any expert opinion to support a finding that the trustee had failed to exercise reasonable competence as to either area. Further, the court found that the trustee had distributed income consistent with the testator's intent. We affirm.

## STATEMENT OF THE FACTS

Mary E. Ward died on January 14, 1969, leaving a Last Will and Testament establishing a spendthrift trust. Initially the trust consisted of farm real estate. The income from the trust was to go to her son for life; at his death, the trust was to go to his children.

During the course of the trust administration, there have been four different trustees. In 1974 the farm was sold and the assets converted to cash and securities.

The present trustee, First American Bank and Trust of Marshall, accepted the trust in May of 1977. Upon receipt of the trust assets, the trustee deposited the full $172,731.68 in its own bank: $120,000 in 5% savings, and $30,000 in four year certificates of deposit. By February of 1978, the trustee had converted most of the $120,000 savings into other investments. A court approved the 1978 accounting period. That approval is a final judgment.

The income cash account has been in a negative cash flow since 1977. Income has been disbursed to the life beneficiary over and above earned income on a yearly basis since 1977. The total value of the trust corpus varied from year to year because of distributions based on anticipated income.

On October 4, 1982, Douglas Ward represented himself and his sisters, pro se, at a hearing to object to the 1979, 1980, and 1981 annual accounts of the trustee. The remaindermen were dissatisfied with the investment policies and were concerned that the trust principal would be endangered by continuing advances of anticipated income to the life beneficiary. That hearing was continued because the beneficiaries failed to present admissible expert testimony to challenge the trustee's administration of the trust. Furthermore, the court instructed Douglas Ward to hire an attorney and retain expert witnesses to receive a full hearing and consideration from the court.

On January 13, 1984, appellants, represented by counsel, contested the 1979, 1980, 1981, 1982, and 1983 accountings of the trustee. At trial, Edward E. Wiesner,

an expert in trust administration, testified for appellants. Also, a report from an accounting firm was submitted, alleging invasion of the trust principal. The trial court concluded that the evidence failed to establish that the trustee had abused its powers of trust in any manner.

## ISSUES

1. Did the trial court err in determining that the primary intent of the testator was to provide the life beneficiary with as much income as was reasonably possible?

2. Did the trial court err in concluding that the trustee's advancement of anticipated income was not an invasion of the trust principal?

3. Did the trial court err in determining that the trustee's depositing of the trust funds into its own bank was not mismanagement?

4. Did the trial court err in concluding that the expert testimony did not establish that the trustee had mismanaged the trust?

5. Did the trial court err by not awarding appellant's attorney's fees?

## ANALYSIS

### Scope of Review

The Minnesota Supreme Court has held that where the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of that evidence. *In Re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976).

■ The critical evidence in this case is Mary E. Ward's Last Will and Testament. Thus, this court may engage in de novo review and is free to make its own determination regarding donor's intent.

### I.

■ The court's role in trust administration is to fulfill the donor's intent, "which is to be gathered from the whole instrument and all reasonable inferences that may be drawn from it." *In Re Trust of*

*Tufford*, 275 Minn. 66, 71, 145 N.W.2d 59, 64 (1966).

Appellants contend the trustee's policy of maximizing income is contrary to the intention of the testator as expressed in her will. They claim that the testator's intent was for the trust corpus to be maintained and improved and, secondly, to pay the remaining net income, if any, to the life beneficiary.

■ The trial court concluded that the testator's primary intent was to provide the life beneficiary with as much income as was reasonably possible to realize from the trust estate. We agree.

When the present trustee was appointed, the trust assets had been liquidated. The intentions of the testator as to the investment of cash is found in Article III, Paragraph 5 of her will:

5. The trustee shall invest and reinvest all principal cash in the trust fund in first mortgages on improved real estate, in municipal or corporation bonds or in any other form of income bearing property, including real estate.

Mrs. Ward further stated in Article III, paragraph 1 that the real estate was devised to the trustee for the following uses and purposes:

1. To pay such amount of the net income from the trust fund to my son, DeForrest Ward II, as is in the unlimited discretion of my trustee not needed for the reduction of principal on the mortgage on said real estate or for improvements or repairs to said real estate or for taxes and other necessary and proper carrying charges and expenses against said real estate, or for any state and federal income taxes that may be imposed upon this trust.

We hold that it was Mrs. Ward's intention for cash to be invested in such a manner so as to maximize income and safety, rather than to incur the risks of assets with lower income but higher growth potential. Furthermore, the will gives the trustee unlimited discretion in making income payments to the income beneficiary.

As noted, the account for the 1978 period was approved by the court. That approval is a final judgment which we are not free to disturb. Only minimal changes have been made in the assets since the 1978 approval. As the court approved the investment philosophy of the trustee in 1978, it was reasonable for the trustee to continue to invest trust assets in the approved manner.

## II.

The trustee made distributions of the income based upon anticipated income rather than earned income. Appellants claim that this advancement of income before receipt constitutes unauthorized invasion of principal.

■ This distribution of anticipated income to the life beneficiary was proper because: 1) it was authorized by the trust instrument, 2) expert testimony established that this sort of distribution is customary in the trade, 3) it was authorized by statute, and 4) it had already been approved by the court.

The trust instrument gave the trustee the authority to determine income and principal. Article III–5 provides in part: "The trustee may determine in all cases what receipts are income and what are principal, and what disbursements are chargeable to income and what to principal."

Both trust experts testified that it is customary in the administration of estates to make distribution based upon anticipated income.

Minn.Stat. § 501.51 (1982) provides:

Subd. 2. In the administration of a decedent's estate or an asset becoming subject to a trust by reason of a will

\* \* \* \* \* \*

(b) receipts in the form of periodic payments, other than corporate distributions to stockholders, including rent, interest, or annuities, not due at the date of death of the testator shall be treated as accruing from day to day. That portion of the receipt accruing before the date of death is principal, and the balance is income.

Also, Minn.Stat. § 501.66, subd. 30 (1982), provides:

The trustee may advance income to or for the use of the beneficiaries, for which advance such trustee shall have a lien on the future benefits of such beneficiary.

Finally, distribution to the beneficiary based on anticipated income was included in the annual account for the 1978 period. As this account has been approved with no appeal, it is res judicata and the trustee should have been able reasonably to rely on the court's approval.

## III.

■ Appellants claim that the trustee breached its fiduciary duties to the principal beneficiaries by depositing large sums of money in its own bank. This claim is without merit.

Minn.Stat. § 501.66, subd. 7 (1982), allows deposits in the trustee's bank:

The trustee may deposit trust funds in a bank, including a bank operated by the trustee, or in a state or federal savings and loan association.

While authorized, we do caution the placement of funds (as indicated herein) as quickly as possible in financial instruments to maximize income.

Additionally, a substantial portion of the investments were made prior to January 31, 1978. Since that account has been approved, this issue is also res judicata.

## IV.

The burden of proof was on the appellants to prove by a fair preponderance of the evidence that the reinvestments made by the trustee subsequent to January 31, 1978, were either improvident or the result of a failure to exercise reasonable discretion. The appellants did not meet this burden.

■ Appellant's expert witness merely expressed his personal opinion as to the matters involved. Wiesner testified that although he would have done things differently, the trust was administered properly.

The accountant's report was not complied by an expert in trust administration, and, further, there was considerable dispute as to the figures used.

Neither Wiesner's testimony nor the accountant's report proved that the trustee had mismanaged the trust.

## V.

■ An allowance of attorney's fees is proper when the trust instrument in dispute is sufficiently ambiguous to require litigation to establish its meaning and effect. *In Matter of Campbell's Trusts*, 258 N.W.2d 856, 868 (1977).

■ Mary E. Ward's testamentary trust is free of ambiguity, and litigation was not required to establish its meaning and effect. The trust has been managed properly by the trustee and the income has been distributed to the life beneficiary in a manner consistent with the testator's intent. The trial court did not err in not awarding appellant attorney's fees.

## DECISION

The testator's intent, as discerned from her testamentary trust, was to provide the life beneficiary with as much income as was reasonably possible.

The trustee in no way mismanaged the trust corpus.

Appellants were not entitled to attorney's fees.

Affirmed.